**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MEGAN MATHIAS**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **Case No. 14-CV-06348** |
| v. ) | |
| ) | **Jury Trial Demanded** |
| **HORWOOD MARCUS & BERK** ) | |
| **CHARTERED**, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S COMPLAINT

Now Comes Plaintiff, **Megan Mathias** ("Ms. Mathias" or "Plaintiff") by and through her attorneys, The Prinz Law Firm, P.C., and for her Complaint against Defendant, **Horwood Marcus & Berk** ("HMB," the "Firm," or "Defendant") states as follows:

## INTRODUCTION

1. This is an action for gender and marital status discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*, the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/8-101 *et seq*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*

2. Plaintiff Megan Mathias was formerly an associate attorney at Defendant Horwood Marcus & Berk.

3. During her employment, the Firm failed to promote her because of her gender, female.

4. The Firm also gave Ms. Mathias less favorable opportunities than similarly situated male colleagues.

5.      After Ms. Mathias complained about such discrimination, the Firm retaliated against her by firing her.

6.      At the time the Firm fired her, Ms. Mathias was a single mother who was five months pregnant with her second child.

7.      Members of Firm management frequently made derogatory comments about Ms. Mathias' status as a single mother.

8.      The Firm's treatment of Ms. Mathias showed that it disliked her failure to live up to the stereotype of the "typical, conservative woman."

9.      After firing her, the Firm immediately terminated her health insurance, even though she was pregnant.

10.     The Firm also timed the termination to avoid paying Ms. Mathias her 2013 year-end bonus which she earned throughout 2013 but was not due to be paid until December of 2013.

## JURISDICTION AND VENUE

11.     Subject matter for Plaintiff's Title VII claims is premised on 28 U.S.C. § 1331.

12.     Supplemental jurisdiction for Plaintiff's Illinois state law claims is premised on 28 U.S.C. § 1367.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claim occurred in this District.

14.     On January 10, 2014, Plaintiff filed a charge before the United States Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR") related to certain claims contained herein.

15.     On June 4, 2014, Plaintiff received a Right to Sue Notice from the EEOC.   (RTS, attached as Ex. 1)

**THE PARTIES**

16.     At all relevant times, Plaintiff Megan Mathias was a citizen of the United States and the State of Illinois and a resident of this judicial district.  Until her termination on or about November 25, 2013, she was an "employee" of Defendant within the meaning of Title VII and the IHRA.

17.     Defendant Horwood Marcus & Berk Chartered is a law firm and an Illinois company.  It maintains its principal place of business at 500 W. Madison St., Ste. 3700, Chicago, IL 60661.  During the relevant time, it was the "employer" of Plaintiff within the meaning of Title VII and the IHRA.

**FACTS**

18.     Ms. Mathias (female and unmarried) began working for the Firm in 2007 as an associate attorney.

19.     Throughout her employment, Ms. Mathias always performed her job well.

20.     Quickly, Ms. Mathias became known as a top performer in the Firm's Litigation Department.

21.     In 2010, the Firm named Ms. Mathias as one of its top billing associates.

22.     Ms. Mathias represented the Firm at multiple networking and speaking events.

23.     Her participation in these events led to new business for the Firm.

24.     As a result of her marketing activities for the Firm, Ms. Mathias earned substantial bonuses.

25.     During her employment, Ms. Mathias managed cases as "first chair."

26.     Ms. Mathias also spent a substantial amount of time mentoring less seasoned attorneys within the Firm.

27.     Through 2012, she was recognized for her strong performance in nearly every formal evaluation.

28.     In or about January 2013, the managing partner of the Firm, Keith Berk, told Ms. Mathias that she was a "sharp litigator with great energy, one that got results" and that she was not "cerebral" like other litigators in the group.

29.     Shortly before being terminated, one of Plaintiff's top accomplishments included leading and executing a pitch in Washington, D.C. to bring on the Federal Deposit Insurance Corporation ("FDIC") as a client, resulting in great revenue potential for the Firm.

30.     Ms. Mathias was also one of the only women at the Firm to receive awards from women's organizations and to rise to executive leadership of a women's organization (the Board of Directors for the Coalition of Women's Initiatives in Law).

31.     During her employment, the Firm discriminated against Ms. Mathias by giving similarly situated male associate attorneys more favorable employment opportunities than her.

32.     Those favorable opportunities gave the male attorneys an "edge" over the female attorneys, including Ms. Mathias, on the partnership track.

33.     Hal Wood (male), one of the partners for whom Ms. Mathias performed work for over six years, never allowed her to conduct a single deposition or argue any contested motions on his cases.

34.     In contrast, Wood assigned male associates with far less experience and no trial experience at all to perform such work on his cases.

4

35.     For example, Wood assigned a third-year male associate attorney to depose witnesses in at least one matter in 2013.

36.     Ms. Mathias also observed that the Firm's Litigation Department has generally been hostile to advancing women and has refused to support women in their career track to partnership.

37.     During Plaintiff's tenure, and throughout the Firm's history, there have been no female partners in the Litigation Department.

38.     For the majority of Plaintiff's tenure, there were no other female attorneys at all in the Firm's Litigation Department.

39.     The Firm's discriminatory attitude toward Ms. Mathias was also revealed by Department Leadership's multiple negative comments about her status as a single mother, her marital status, and her pregnancy.

40.     Those comments ranged from referring to her status as a single parent as a "situation" to ending sentences with the comment "…no matter what is going on in your personal life."

41.     As the sole female litigator and, to her knowledge the only single mother, Ms. Mathias was not the stereotypical commercial litigator at the Firm.

42.     Wood frequently suggested to Ms. Mathias that she should "consider her role as a mother."

43.     Based on these comments and his failure to give her the same opportunities as male colleagues, Ms. Mathias concluded that Wood did not approve of her working at the Firm as a single mother.

44. Despite the odds being stacked against her due to her gender and marital status, Ms. Mathias sought partnership with the Firm both in 2011 and 2012.

45. On both occasions, the Firm chose a much less experienced and less qualified male associate for partnership instead of Ms. Mathias.

46. In 2012, the Firm selected a male colleague with less litigation experience than Ms. Mathias and almost no business development experience for partnership.

47. At the end of 2012, after Ms. Mathias was rejected for partnership, she informed senior leadership that she expected to be selected for partnership in 2013, and that she could not understand how married male associates with inferior credentials had been selected over her both in terms of the delegation of work and partnership.

48. After Ms. Mathias complained about gender and marital status discrimination in this manner, the Firm began taking steps to not only ensure that she never made partner, but also to set her up for termination.

49. In 2013, after Ms. Mathias complained of being treated differently than male colleagues, Department management began criticizing her performance, whereas they had never done so before.

50. Specifically, leadership misrepresented and manufactured work product issues, commenced a pattern of mistreatment and intimidation, erected obstacles to advancement, and ignored all positive contributions.

51. This conduct was so noticeable to other employees at the Firm, that a new employee mentioned to Ms. Mathias that Department Leadership was "mean" to her, and asked if she was "ok" in light of her pregnancy and the general hostile environment being directed to her at the Firm.

52.     During the period of time after Ms. Mathias complained about gender and marital status discrimination, the Firm began "papering her file" to set her up for termination.

53.     For example, in 2013 Wood began emailing the Firm's Chief Operating Officer, Kasia Johnson, any time that Ms. Mathias requested assignment extensions or had direct contact with Department clients.

54.     Wood also began ignoring correspondence Ms. Mathias sent him, refused to communicate with her, and also delayed responding to her requests to him for input or information regarding client matters.

55.     Wood's actions made it considerably more difficult for Ms. Mathias to perform her job effectively.

56.     Wood then commenced a pattern of ignoring communications and setting up circumstances designed to impair Plaintiff's success on the job.

57.     In or about September 2013, Ms. Mathias informed the Firm that she was pregnant.

58.     Instead of celebrating the news, more than one member of the Department's leadership abruptly asked Ms. Mathias whether she was planning on marrying the father of the baby.

59.     When Ms. Mathias informed the partners that she believed marriage was a separate issue, one Equity Partner responded with a comment to the effect of, "don't talk to my daughters. I don't want them getting any bad ideas from you."

60.     This comment, along with the heightened and mistreatment which commenced shortly thereafter, only furthered Plaintiff's belief that the Firm was discriminating against her

due to her sex and marital status, and retaliating against her for complaining about discrimination.

61.     This conduct also showed how the Firm discriminated against Ms. Mathias because she was a single mother and did not fit the conservative female gender stereotype it expects of its female employees.

62.     Tellingly, the Firm has never promoted an unmarried woman to partnership.

63.     After Ms. Mathias disclosed her pregnancy, the Firm ramped up its efforts to create pretextual reasons for her termination.

64.     On or about October 1, 2013, Wood emailed Ms. Mathias and requested a meeting to "discuss some ongoing problems with [her] performance."

65.     At the meeting, Wood informed Ms. Mathias that she allegedly needed to "better communicate" with him about where she was and what she was doing.

66.     Ms. Mathias found this instruction suspect, both because it involved scrutiny that the Firm did not give to male associate attorneys, and because she had had little opportunity to work with Wood during the preceding months.  For this reason, there was no basis for his purported "ongoing" concerns.

67.     Wood then requested Ms. Mathias to write her own Performance Improvement Plan ("PIP"), but thereafter rejected the written PIP she submitted.

68.     At the same time that he was reading from Plaintiff's prepared PIP, Wood then falsely claimed that Ms. Mathias had failed to prepare a PIP at all.

69.     During that meeting, Wood also requested Ms. Mathias to communicate her marketing activities directly to Department Leadership, something that similarly situated male associate attorneys were not required to do.

70.     Because of the timing and accusatory nature of the meeting, Ms. Mathias suspected that her gender and marital status likely motivated the newly issued discipline.

71.     Subsequently, other Firm employees began to express concern that certain members of the Firm's leadership were applying different standards and creating unfounded requirements for Ms. Mathias that were not applicable to her male colleagues.

72.     Accordingly, Ms. Mathias documented that concern in an email to Johnson, and provided her with details regarding her recent litigation successes and marketing activities.

73.     Johnson responded to Plaintiff's written notification of mistreatment with her own attack.

74.     Specifically, despite the fact that Ms. Mathias had just brought in two new client matters to the Firm, Johnson wrote that her marketing activities had "not resulted in any new clients or any demonstrable increase in revenue to the Firm."

75.     Johnson further accused Ms. Mathias of "merely punching a clock" with respect to her dedication to her job, which was an untrue accusation.

76.     At the Firm, business development is not a requirement for partnership.

77.     As such, Johnson's attack against Ms. Mathias was both unfounded and unnecessary.

78.     The tone of Johnson's response was hostile and indicative of the Firm's overall attitude towards any complaint of discriminatory treatment.

79.     Even though Ms. Mathias knew at that point that the Firm was intent on firing her, she still strove to meet the vague standards that Wood, Johnson, and others set for her.

80.     Even though Wood had admonished Ms. Mathias to be in more contact with him, he specifically withheld contact from her at vital junctures, setting her up to fail.

9

81. For example, at the end of November 2013, Ms. Mathias was forced to relocate her home and scheduled two days off to attend to the move.

82. At the same time, she was working on an assignment for one of Wood's cases.

83. Despite the fact that the brief was not due until early December, Ms. Mathias had given herself a self-imposed deadline of November 20, 2013 to complete it.

84. After performing some preparatory work on the brief, Ms. Mathias determined a more simplified approach would be better, and attempted to contact Wood to discuss it before providing him a brief that would be different than what he anticipated.

85. Wood ignored Plaintiff's calls and voicemails related to the timing of the draft.

86. Due to emergency problems at Plaintiff's home (such as no heat and a temperature below 30 degrees) and an emergency brief assigned by another partner, Ms. Mathias emailed and called Wood to let him know that she planned to use that weekend to finish the draft, which was not due until December.

87. After Wood ignored Ms. Mathias, she also left him multiple voicemails. He also ignored those.

88. Ms. Mathias worked until midnight that Friday evening and spent the remainder of the weekend completing the brief, and assisting another partner on an emergency filing that was due Monday.

89. It was not until Sunday evening that Wood responded to any of Plaintiff's attempts at contact.

90. Ms. Mathias provided Wood with the completed brief that Monday morning, well before the date it was actually due to the court. She provided the emergency brief to the other partner that day as well.

91.    In this manner, Plaintiff's performance met and exceeded all of the requirements that Department leadership had set for her.

92.    In late November 2013, the Firm commenced its plan to terminate Ms. Mathias.

93.    Ms. Mathias had previously expressed her concerns about mistreatment to an equity partner in the Corporate Department, Jeff Hechtman.

94.    Hechtman requested time to "get up to speed" and determine what had been occurring in the Litigation Department.

95.    On or about Friday, November 22, 2013, Hechtman emailed Ms. Mathias to set up a meeting for Monday, November 25, 2013 and to inform her that he was now "up to speed."

96.    On November 25, 2013, Ms. Mathias received a call from Johnson telling her that the scheduled meeting that day would no longer be with Hectman, but would be with managing partner Keith Berk.

97.    At that meeting, the Firm terminated Plaintiff's employment, effective immediately, and she was escorted out of the office.

98.    Even though Ms. Mathias was five months pregnant at the time she was fired, the Firm also terminated her health insurance effective three business days later, causing significant hardship for her and her family.

99.    The abrupt termination of her health insurance gave Ms. Mathias no opportunity to find alternatives for pre-scheduled appointments that were necessary for her maternity care.

100.    In the recent past, the Firm had also terminated another attorney who was pregnant at the time of her termination.

101.    In addition, the Firm refused to pay Ms. Mathias the annual bonus which it had promised to pay her.

102.     Ms. Mathias had earned her annual bonus throughout the year, but it was not payable until December.

103.     The Firm refused to pay Ms. Mathias a *pro rata* share of the bonus, even though her termination took place just two days before the end of the fiscal year.

104.     As a result of the Firm's actions, Ms. Mathias has suffered and continues to suffer loss of income, loss of employee benefits, and emotional distress.

## COUNT I – GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

105.     Plaintiff adopts and realleges paragraphs 1 through 104.

106.     Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

107.     The Firm discriminated against Ms. Mathias on the basis of her gender, female, when it treated her differently and worse than her similarly situated male colleagues when it: 1) gave her inferior advancement opportunities; 2) passed her up for partnership opportunities in favor of less qualified male associates; 3) made negative comments suggesting that Plaintiff did not meet the Firm's stereotype of a conservative female; 4) took actions that made it much more difficult for Plaintiff to perform her job; and 5) fired her.

108.     As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Ms. Mathias requests that:

a.   The Firm be adjudicated and declared to have violated Title VII;

b.   Ms. Mathias be reinstated and/or awarded other appropriate equitable relief, such as front pay;

c. Ms. Mathias be awarded appropriate damages to compensate her for any and all lost wages and other benefits and/or any other appropriate relief to which she is entitled;

d. Ms. Mathias be awarded lost future earnings to compensate her for her loss;

e. Ms. Mathias be awarded compensatory damages in an appropriate amount and as allowed by law;

f. Ms. Mathias be awarded punitive damages in an appropriate amount and as allowed by law;

g. Ms. Mathias be awarded pre-judgment interest on the above damages;

h. Ms. Mathias be awarded her reasonable attorneys' fees, costs, and litigation expenses (including expert witness fees); and

i. The Court grant such other and further relief as it deems just.

## COUNT II – GENDER DISCRIMINATION IN VIOLATION OF THE IHRA

109. Plaintiff adopts and realleges paragraphs 1 through 108.

110. Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

111. The Firm discriminated against Ms. Mathias on the basis of her gender, female, when it treated her differently and worse than her similarly situated male colleagues when it: 1) gave her inferior advancement opportunities; 2) passed her up for partnership opportunities in favor of less qualified male associates; 3) made negative comments suggesting that Plaintiff did not meet the Firm's stereotype of a conservative female; 4) took actions that made it much more difficult for Plaintiff to perform her job; and 5) fired her.

112. As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Ms. Mathias requests that:

a.  The Firm be adjudicated and declared to have violated the IHRA;

b.  Ms. Mathias be reinstated and/or awarded other appropriate equitable relief, such as front pay;

c.  Ms. Mathias be awarded appropriate damages to compensate her for any and all lost wages and other benefits and/or any other appropriate relief to which she is entitled;

d.  Ms. Mathias be awarded lost future earnings to compensate her for her loss;

e.  Ms. Mathias be awarded compensatory damages in an appropriate amount and as allowed by law;

f.  Ms. Mathias be awarded pre-judgment interest on the above damages;

g.  Ms. Mathias be awarded her reasonable attorneys' fees, costs, and litigation expenses (including expert witness fees); and

h.  The Court grant such other and further relief as it deems just.

## COUNT III – MARITAL STATUS DISCRIMINATION IN VIOLATION OF TITLE VII

113.    Plaintiff adopts and realleges paragraphs 1 through 112.

114.    Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

115.    The Firm discriminated against Ms. Mathias on the basis of her marital status, unmarried, when it treated her differently and worse than her similarly situated married colleagues when it: 1) gave her inferior advancement opportunities; 2) passed her up for partnership opportunities in favor of less qualified married associates; 3) made negative comments suggesting that the Firm disapproved of the fact that Plaintiff is a single mother; 4) took actions that made it much more difficult for Plaintiff to perform her job; and 5) fired her.

14

116.     As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Ms. Mathias requests that:

a.  The Firm be adjudicated and declared to have violated Title VII;

b.  Ms. Mathias be reinstated and/or awarded other appropriate equitable relief, such as front pay;

c.  Ms. Mathias be awarded appropriate damages to compensate her for any and all lost wages and other benefits and/or any other appropriate relief to which she is entitled;

d.  Ms. Mathias be awarded lost future earnings to compensate her for her loss;

e.  Ms. Mathias be awarded compensatory damages in an appropriate amount and as allowed by law;

f.  Ms. Mathias be awarded punitive damages in an appropriate amount and as allowed by law;

g.  Ms. Mathias be awarded pre-judgment interest on the above damages;

h.  Ms. Mathias be awarded her reasonable attorneys' fees, costs, and litigation expenses (including expert witness fees); and

i.  The Court grant such other and further relief as it deems just.

## COUNT IV – MARITAL STATUS DISCRIMINATION IN VIOLATION OF THE IHRA

117.     Plaintiff adopts and realleges paragraphs 1 through 116.

118.     Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

119.     The Firm discriminated against Ms. Mathias on the basis of her marital status, unmarried, when it treated her differently and worse than her similarly situated married

15

colleagues when it: 1) gave her inferior advancement opportunities; 2) passed her up for partnership opportunities in favor of less qualified married associates; 3) made negative comments suggesting that the Firm disapproved of the fact that Plaintiff is a single mother; 4) took actions that made it much more difficult for Plaintiff to perform her job; and 5) fired her.

120.    As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Ms. Mathias requests that:

a.  The Firm be adjudicated and declared to have violated the IHRA;

b.  Ms. Mathias be reinstated and/or awarded other appropriate equitable relief, such as front pay;

c.  Ms. Mathias be awarded appropriate damages to compensate her for any and all lost wages and other benefits and/or any other appropriate relief to which she is entitled;

d.  Ms. Mathias be awarded lost future earnings to compensate her for her loss;

e.  Ms. Mathias be awarded compensatory damages in an appropriate amount and as allowed by law;

f.  Ms. Mathias be awarded pre-judgment interest on the above damages;

g.  Ms. Mathias be awarded her reasonable attorneys' fees, costs, and litigation expenses (including expert witness fees); and

h.  The Court grant such other and further relief as it deems just.

### <u>COUNT V – RETALIATION IN VIOLATION OF TITLE VII</u>

121.    Plaintiff adopts and realleges paragraphs 1 through 120.

122.    Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

16

123.     Ms. Mathias complained to the Firm that she was being subject to gender discrimination.

124.     At the time she made her complaint, she reasonably believed that she was being subject to unlawful gender discrimination.

125.     After she complained, the Firm unlawfully retaliated against her for making her complaint, by: 1) "papering her file" with the goal of setting her up for termination; 2) withholding vital communication from her to make her job more difficult; 3) placing her on a meritless Performance Improvement Plan; and 4) firing her for false and pretextual reasons.

126.     As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Ms. Mathias requests that:

a.  The Firm be adjudicated and declared to have violated Title VII;

b.  Ms. Mathias be reinstated and/or awarded other appropriate equitable relief, such as front pay;

c.  Ms. Mathias be awarded appropriate damages to compensate her for any and all lost wages and other benefits and/or any other appropriate relief to which she is entitled;

d.  Ms. Mathias be awarded lost future earnings to compensate her for her loss;

e.  Ms. Mathias be awarded compensatory damages in an appropriate amount and as allowed by law;

f.  Ms. Mathias be awarded punitive damages in an appropriate amount and as allowed by law;

g.  Ms. Mathias be awarded pre-judgment interest on the above damages;

h.  Ms. Mathias be awarded her reasonable attorneys' fees, costs, and litigation expenses (including expert witness fees); and

i.  The Court grant such other and further relief as it deems just.

## COUNT VI – RETALIATION IN VIOLATION OF THE IHRA

127.    Plaintiff adopts and realleges paragraphs 1 through 126.

128.    Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

129.    Ms. Mathias complained to the Firm that she was being subject to gender discrimination.

130.    At the time she made her complaint, she reasonably believed that she was being subject to unlawful gender discrimination.

131.    After she complained, the Firm unlawfully retaliated against her for making her complaint, by: 1) "papering her file" with the goal of setting her up for termination; 2) withholding vital communication from her to make her job more difficult; 3) placing her on a meritless Performance Improvement Plan; and 4) firing her for false and pretextual reasons.

132.    As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

WHEREFORE, Ms. Mathias requests that:

a.  The Firm be adjudicated and declared to have violated the IHRA;

b.  Ms. Mathias be reinstated and/or awarded other appropriate equitable relief, such as front pay;

c.  Ms. Mathias be awarded appropriate damages to compensate her for any and all lost wages and other benefits and/or any other appropriate relief to which she is entitled;

d.   Ms. Mathias be awarded lost future earnings to compensate her for her loss;

e.   Ms. Mathias be awarded compensatory damages in an appropriate amount and as

allowed by law;

f.   Ms. Mathias be awarded pre-judgment interest on the above damages;

g.   Ms. Mathias be awarded her reasonable attorneys' fees, costs, and litigation expenses

(including expert witness fees); and

h.   The Court grant such other and further relief as it deems just.

## COUNT VII – FAILURE TO PAY BONUS IN VIOLATION OF THE IWPCA

133.   Plaintiff adopts and realleges paragraphs 1 through 132.

134.   As part of her employment, the Firm promised to pay Ms. Mathias a bonus for

work she performed throughout the year.

135.   Pursuant to the parties' agreement, the bonus earned throughout the year and was

then payable in December 2013.

136.   Ms. Mathias in fact earned her bonus for work performed throughout 2013.

137.   The Firm fired Ms. Mathias on or about November 25, 2013, preventing Ms.

Mathias from receiving any portion of her earned bonus.

138.   A *pro rata* share of Plaintiff's earned bonus is now due and owing.

139.   The Firm refused to pay Ms. Mathias a *pro rata* share of her earned bonus.

140.   Ms. Mathias made a demand on the Firm that it pay her a *pro rata* share of her

earned bonus, but the Firm refused.

141.   As a result of the Firm's actions, Ms. Mathias has suffered both the loss of her

bonus and the amount she has expended in attorneys' fees in seeking to have the bonus paid.

WHEREFORE, Ms. Mathias requests that:

a. The Firm be adjudicated and declared to have violated the IWPCA;

b. Ms. Mathias be awarded damages in an amount equal to the unpaid bonus due and owing;

c. Ms. Mathias be awarded statutory damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid;

d. Ms. Mathias be awarded interest on all amounts awarded;

e. Ms. Mathias be awarded her costs of maintaining this action, including reasonable attorneys' fees, together with all costs and expenses of suit; and

f. The Court grant such other and further relief as it deems just.

Dated: August 18, 2014

Respectfully submitted,

By:_____s/ Kristen E. Prinz_____
     One of Plaintiff's Attorneys

The Prinz Law Firm, P.C.
Kristen E. Prinz
Jessica Fayerman
1 East Wacker Drive, Suite 550
Chicago, IL 60601
P:  (312) 212-4450
F:  (312) 284-4822
kprinz@prinz-lawfirm.com
jfayerman@prinz-lawfirm.com