**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MEGAN MATHIAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Finnegan |
| | ) | Case No. 1: 14-cv-06348 |
| HORWOOD MARCUS & BERK | ) | |
| CHARTERED, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT[1]

NOW COMES Defendant, Horwood Marcus & Berk Chartered ("HMB"), by and through its attorneys, and for its Answer to Plaintiff's Complaint, states as follows:

### INTRODUCTION

1.      This is an action for gender and marital status discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.,* the Illinois Human Rights Act ("IHRA"), 775 ILCS § 5/8-101 *et seq.,* and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1, *et seq.*

### ANSWER:

HMB denies that Plaintiff is bringing a claim for marital status discrimination under Title VII, but admits that Plaintiff is asserting the remaining claims set forth in Paragraph No. 1. HMB denies that Plaintiff is entitled to any relief or judgment in her favor. Answering further, HMB has filed a motion to dismiss Counts II, III, and V of Plaintiff's Amended Complaint contemporaneously with this Answer.

2.      Plaintiff Megan Mathias was formerly an associate attorney at Defendant Horwood Marcus & Berk.

---

[1]      This Answer re-states those headings used in Plaintiff's Amended Complaint for the convenience of the reader only.  HMB neither admits, adopts or acknowledges the accuracy or truthfulness of any statement or characterization contained in any such re-stated heading.

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 2.

3.      During her employment, the Firm failed to promote her because of her gender, female.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 3.

4.      The Firm also gave Ms. Mathias less favorable opportunities than similarly situated male colleagues.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 4.

5.      After Ms. Mathias complained about such discrimination, the Firm retaliated against her by firing her.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 5.

6.      At the time the Firm fired her, Ms. Mathias was a single mother who was five months pregnant with her second child.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph No. 6.

7.      Members of Firm management frequently made derogatory comments about Ms. Mathias' status as a single mother.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 7.

8.      The Firm's treatment of Ms. Mathias showed that it disliked her failure to live up to the stereotype of the "typical, conservative woman."

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 8.

9.     After firing her, the Firm immediately terminated her health insurance, even though she was pregnant.

**ANSWER:**

HMB admits that Plaintiff's health insurance was terminated as required by the Firm's health insurance plan, effective December 1, 2013.  Answering further, Plaintiff declined to elect health insurance coverage under COBRA and declined HMB's offer to pay the cost of COBRA for Plaintiff for the month of December 2013.  HMB denies the remaining allegations contained in Paragraph No. 9.

10.     The Firm also timed the termination to avoid paying Ms. Mathias her 2013 year-end bonus which she earned throughout 2013 but was not due to be paid until December of 2013.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 10.

## JURISDICTION AND VENUE

11.     Subject matter for Plaintiff's Title VII claims is premised on 28 U.S.C. § 1331.

**ANSWER:**

HMB admits that this Court has jurisdiction over the Title VII claims asserted in Plaintiff's Amended Complaint, but denies that Plaintiff is entitled to any relief or judgment in her favor.

12.     Supplemental jurisdiction for Plaintiffs' Illinois state law claims is premised on 28 U.S.C. § 1367.

**ANSWER:**

HMB admits that this Court has supplemental jurisdiction over Plaintiff's Illinois state law claims, but denies that Plaintiff is entitled to any relief or judgment in her favor.  Answering further, HMB has filed a motion to dismiss Plaintiff's Illinois state law claims contemporaneously with this Answer.

3

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claim occurred in this District.

**ANSWER:**

HMB admits that venue is proper within this District, but denies that it engaged in any unlawful conduct or that Plaintiff is entitled to any relief or judgment in her favor.

14.     On January 10, 2014, Plaintiff filed a charge before the United States Equal Employment Opportunity Commission ("EEOC") and Illinois Department of Human Rights ("IDHR") related to certain claims contained herein.

**ANSWER:**

HMB admits that it is in possession of a Charge of Discrimination dated January 8, 2014 that was filed with the State of Illinois, Department of Human Rights ("IDHR"), and a Notice from the U.S. Equal Employment Opportunity Commission ("EEOC"), dated January 22, 2014, stating that the IDHR Charge was cross-filed with the EEOC.  HMB denies the remaining allegations contained in Paragraph No. 14

15.     On June 4, 2014, Plaintiff received a Right to Sue Notice from the EEOC. (RTS, attached as Ex. 1).

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the allegation contained in Paragraph No. 15.  Answering further, HMB states that it is in possession of a Notice of Right to Sue letter from the EEOC dated June 4, 2014.

## THE PARTIES

16.     At all relevant times, Plaintiff Megan Mathias was a citizen of the United States and the State of Illinois and a resident of this judicial district. Until her termination on or about November 25, 2013, she was an "employee" of HMB within the meaning of Title VII and the IHRA.

**ANSWER:**

HMB admits that Plaintiff was an employee of HMB until her November 25, 2013 termination. HMB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 16.

17.     Defendant Horwood Marcus & Berk Chartered is a law firm and an Illinois company. It maintains its principal place of business at 500 W. Madison St., Ste. 3700, Chicago, IL 60661. During the relevant time, it was the "employer" of Plaintiff within the meaning of Title VII and the IHRA.

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 17, but denies that Plaintiff is entitled to any relief or judgment in her favor.

**FACTS**

18.     Ms. Mathias (female and unmarried) began working for the Firm in 2007 as an associate attorney.

**ANSWER:**

HMB admits that it hired Plaintiff as an associate attorney in 2007 and that she is female. HMB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 18.

19.     Throughout her employment, Ms. Mathias always performed her job well.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 19.

20.     Quickly, Ms. Mathias became known as a top performer in the Firm's Litigation Department.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 20.

21.     In 2010, the Firm named Ms. Mathias as one of its top billing associates.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 21.

22.     Ms. Mathias represented the Firm at multiple networking and speaking events.

**ANSWER:**

HMB admits that Plaintiff attended networking and speaking events.  HMB denies the remaining allegations contained in Paragraph No. 22.

23.     Her participation in these events led to new business for the Firm.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 23.

24.     As a result of her marketing activities for the Firm, Ms. Mathias earned substantial bonuses.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 24.

25.     During her employment, Ms. Mathias managed cases as "first chair."

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 25 because the phrase "Ms. Mathias managed cases as 'first chair'" is vague and ambiguous.  Answering further, HMB denies that Plaintiff had the authority to work on any case without partner supervision.

26.     Ms. Mathias also spent a substantial amount of time mentoring less seasoned attorneys within the Firm.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 26.

27.     Through 2012, she was recognized for her strong performance in nearly every formal evaluation.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 27.

28.     In or about January 2013, the managing partner of the Firm, Keith Berk, told Ms. Mathias that she was a "sharp litigator with great energy, one that got results" and that she was not "cerebral" like other litigators in the group.

**ANSWER:**

HMB admits that Keith Berk is the managing partner of HMB.  HMB denies the

remaining allegations contained in Paragraph No. 28.

29.     Shortly before being terminated, one of Plaintiff's top accomplishments included leading and executing a pitch in Washington, D.C. to bring on the Federal Deposit Insurance Corporation ("FDIC") as a client, resulting in great revenue potential for the Firm.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 29.

30.     Ms. Mathias was also one of the only women at the Firm to receive awards from women's organizations and to rise to executive leadership of a women's organization (the Board of Directors for the Coalition of Women's Initiatives in Law).

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the

allegation that Plaintiff rose "to executive leadership of a women's organization" and that

Plaintiff was named to the Board of Directors for the Coalition of Women's Initiatives in Law.

HMB denies the remaining allegations contained in Paragraph No. 30.

31.     During her employment, the Firm discriminated against Ms. Mathias by giving similarly situated male associate attorneys more favorable employment opportunities than her.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 31.

32.     Those favorable opportunities gave the male attorneys an "edge" over the female attorneys, including Ms. Mathias, on the partnership track.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 32.

33.     Hal Wood (male), one of the partners for whom Ms. Mathias performed work for over six years, never allowed her to conduct a single deposition or argue any contested motions on his cases.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 33.

34.     In contrast, Wood assigned male associates with far less experience and no trial experience at all to perform such work on his cases.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 34.

35.     For example, Wood assigned a third-year male associate attorney to depose witnesses in at least one matter in 2013.

**ANSWER:**

HMB admits that Wood assigned a male associate attorney to depose witnesses in at least

one matter in 2013, but denies the remaining allegations contained in Paragraph 35.

36.     Ms. Mathias also observed that the Firm's Litigation Department has generally been hostile to advancing women and has refused to support women in their career track to partnership.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 36.

37.     During Plaintiff's tenure, and throughout the Firm's history, there have been no female partners in the Litigation Department.

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 37.

38.     For the majority of Plaintiff's tenure, there were no other female attorneys at all in the Firm's Litigation Department.

**ANSWER:**

HMB admits the allegations in Paragraph No. 38.

39.     The Firm's discriminatory attitude toward Ms. Mathias was also revealed by Department Leadership's multiple negative comments about her status as a single mother, her marital status, and her pregnancy.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 39.

40.     Those comments ranged from referring to her status as a single parent as a "situation" to ending sentences with the comment "...no matter what is going on in your personal life."

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 24.

41.     As the sole female litigator and, to her knowledge the only single mother, Ms. Mathias was not the stereotypical commercial litigator at the Firm.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the

allegation that Plaintiff was not the "stereotypical commercial litigator" at HMB, as that phrase

is vague and ambiguous.  HMB denies the remaining allegations contained in Paragraph No. 41.

42.     Wood frequently suggested to Ms. Mathias that she should "consider her role as a mother."

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 42.

43.     Based on these comments and his failure to give her the same opportunities as male colleagues, Ms. Mathias concluded that Wood did not approve of her working at the Firm as a single mother.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the

allegation that Plaintiff "concluded that Wood did not approve of her working at [HMB] as a

single mother." HMB denies that Wood held this opinion and denies the remaining allegations contained in Paragraph No. 42. Answering further, Wood hired Plaintiff knowing that she was a single mother.

44. Despite the odds being stacked against her due to her gender and marital status, Ms. Mathias sought partnership with the Firm both in 2011 and 2012.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 44.

45. On both occasions, the Firm chose a much less experienced and less qualified male associate for partnership instead of Ms. Mathias.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 46.

46. In 2012, the Firm selected a male colleague with less litigation experience than Ms. Mathias and almost no business development experience for partnership.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 46.

47. At the end of 2012, after Ms. Mathias was rejected for partnership, she informed senior leadership that she expected to be selected for partnership in 2013, and that she could not understand how married male associates with inferior credentials had been selected over her both in terms of the delegation of work and partnership.

**ANSWER:**

HMB admits that Plaintiff was not selected for partnership at the end of 2012, and that she expressed a desire to be selected in 2013. HMB denies the remaining allegations contained in Paragraph No. 47.

48. After Ms. Mathias complained about gender and marital status discrimination in this manner, the Firm began taking steps to not only ensure that she never made partner, but also to set her up for termination.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 33.

49. In 2013, after Ms. Mathias complained of being treated differently than male colleagues, Department management began criticizing her performance, whereas they had never done so before.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 49.

50. Specifically, leadership misrepresented and manufactured work product issues, commenced a pattern of mistreatment and intimidation, erected obstacles to advancement, and ignored all positive contributions.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 50.

51. This conduct was so noticeable to other employees at the Firm, that a new employee mentioned to Ms. Mathias that Department Leadership was "mean" to her, and asked if she was "ok" in light of her pregnancy and the general hostile environment being directed to her at the Firm.

**ANSWER:**

HMB denies that any conduct on the part of the firm was "misrepresented" or "manufactured," denies any "mistreatment" or "intimidation," and further denies that it "erected obstacles" or "ignored all positive contributions" of Plaintiff. HMB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 51.

52. During the period of time after Ms. Mathias complained about gender and marital status discrimination, the Firm began "papering her file" to set her up for termination.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 52.

53. For example, in 2013 Wood began emailing the Firm's Chief Operating Officer, Kasia Johnson. [sic] any time that Ms. Mathias requested assignment extensions or had direct contact with Department clients.

**ANSWER:**

HMB admits that Wood has e-mailed Kasia Johnson regarding Plaintiff's poor performance, including requests for extensions or failure to follow instructions. HMB denies the remaining allegations contained in Paragraph No. 53.

54.     Wood also began ignoring correspondence Ms. Mathias sent her, refused to communicate with her, and also delayed responding to her requests to her for input or information regarding client matters.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 54.

55.     Wood's actions made it considerably more difficult for Ms. Mathias to perform her job effectively.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 55.

56.     Wood then commenced a pattern of ignoring communications and setting up circumstances designed to impair Plaintiff's success on the job.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 56.

57.     In or about September 2013, Ms. Mathias informed the Firm that she was pregnant.

**ANSWER:**

HMB admits that in September 2013 Plaintiff informed certain individuals at HMB that she was pregnant. HMB denies the remaining allegations contained in Paragraph No. 57.

58.     Instead of celebrating the news, more than one member of the Department's leadership abruptly asked Ms. Mathias whether she was planning on marrying the father of the baby.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 58.

59. When Ms. Mathias informed the partners that she believed marriage was a separate issue, one Equity Partner responded with a comment to the effect of, "don't talk to my daughters. I don't want them getting any bad ideas from you."

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 59.

60. This comment, along with the heightened [sic] and mistreatment which commenced shortly thereafter, only furthered Plaintiffs belief that the Firm was discriminating against her due to her sex and marital status, and retaliating against her for complaining about discrimination.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 47.

61. This conduct also showed how the Firm discriminated against Ms. Mathias because she was a single mother and did not fit the conservative female gender stereotype it expects of its female employees.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 61.

62. Tellingly, the Firm has never promoted an unmarried woman to partnership.

**ANSWER:**

HMB admits that it "has never promoted an unmarried woman to partnership," but denies

that this fact is "telling." Answering further, the Firm has hired an unmarried woman as an

equity partner.

63. After Ms. Mathias disclosed her pregnancy, the Firm ramped up its efforts to create pretextual reasons for her termination.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 63.

64. On or about October 1, 2013, Wood emailed Ms. Mathias and requested a meeting to "discuss some ongoing problems with [her] performance."

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 64.

65.     At the meeting, Wood informed Ms. Mathias that she allegedly needed to "better communicate" with her about where she was and what she was doing.

**ANSWER:**

HMB admits that Wood asked Plaintiff to improve her communication.  HMB denies the remaining allegations contained in Paragraph 65.

66.     Ms. Mathias found this instruction suspect, both because it involved scrutiny that the Firm did not give to male associate attorneys, and because she had had little opportunity to work with Wood during the preceding months. For this reason, there was no basis for his purported "ongoing" concerns.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the allegation that "Ms. Mathias found this instruction suspect."  HMB denies the remaining allegations contained in Paragraph No. 66.

67.     Wood then requested Ms. Mathias to write her own Performance Improvement Plan ("PIP"), but thereafter rejected the written PIP she submitted.

**ANSWER:**

HMB admits that Plaintiff was asked to draft her Performance Improvement Plan.  HMB denies the remaining allegations contained in Paragraph No. 67.

68.     At the same time that he was reading from Plaintiff's prepared PIP, Wood then falsely claimed that Ms. Mathias had failed to prepare a PIP at all.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 68.

69.     During that meeting, Wood also requested Ms. Mathias to communicate her marketing activities directly to Department Leadership, something that similarly situated male associate attorneys were not required to do.

**ANSWER:**

HMB admits that at the October 4, 2013 meeting, Plaintiff mentioned certain marketing activities in which she planned to engage on the following day, and that Plaintiff had not made

14

any member of the group aware of the activities prior to the meeting.  Answering further, Plaintiff was told that she needed to improve the substance and method of her communications, including information about marketing activities for purposes of coordination with others in the Firm.

70.     Because of the timing and accusatory nature of the meeting, Ms. Mathias suspected that her gender and marital status likely motivated the newly issued discipline.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff "suspected that her gender and marital status likely motivated the newly issued discipline."  HMB denies that Plaintiff's gender or marital status motivated any of its conduct and denies the remaining allegations contained in Paragraph No. 70.

71.     Subsequently, other Firm employees began to express concern that certain members of the Firm's leadership were applying different standards and creating unfounded requirements for Ms. Mathias that were not applicable to her male colleagues.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 71.

72.     Accordingly, Ms. Mathias documented that concern in an email to Johnson, and provided her with details regarding her recent litigation successes and marketing activities.

**ANSWER:**

HMB admits that Plaintiff sent Kasia Johnson an e-mail on October 7, 2013 regarding her litigation and marketing activities.  HMB denies the remaining allegations contained in Paragraph No. 72.

73.     Johnson responded to Plaintiff's written notification of mistreatment with her own attack.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 73.

74.     Specifically, despite the fact that Ms. Mathias had just brought in two new client matters to the Firm, Johnson wrote that her marketing activities had "not resulted in any new clients or any demonstrable increase in revenue to the Firm."

**ANSWER:**

HMB admits that Kasia Johnson's October 9, 2013 e-mail stated in part that Plaintiff's marketing activities had "not resulted in any new clients or any demonstrable increase in revenue to the firm." HMB denies the remaining allegations contained in Paragraph No. 74.

75.     Johnson further accused Ms. Mathias of "merely punching a clock" with respect to her dedication to her job, which was an untrue accusation.

**ANSWER:**

HMB admits that Johnson's October 9, 2013 e-mail states, "You seem to have lost your enthusiasm for the work you are doing and are merely 'punching a clock.'" HMB denies the remaining allegations contained in Paragraph No. 75.

76.     At the Firm, business development is not a requirement for partnership.

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 76.

77.     As such, Johnson's attack against Ms. Mathias was both unfounded and unnecessary.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 77.

78.     The tone of Johnson's response was hostile and indicative of the Firm's overall attitude towards any complaint of discriminatory treatment.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 78.

79.     Even though Ms. Mathias knew at that point that the Firm was intent on firing her, she still strove to meet the vague standards that Wood, Johnson, and others set for her.

**ANSWER:**

HMB denies that vague standards were set for Plaintiff and that the "Firm was intent on firing her." HMB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 79.

80. Even though Wood had admonished Ms. Mathias to be in more contact with her, he specifically withheld contact from her at vital junctures, setting her up to fail.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 80.

81. For example, at the end of November 2013, Ms. Mathias was forced to relocate her home and scheduled two days off to attend to the move.

**ANSWER:**

HMB denies that Plaintiff "scheduled" two days off. HMB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 81. Answering further, Plaintiff did not give advance notice to Hal Wood, for whom she was writing a brief with an impending court deadline, that she would be absent from work on the days referenced in this Paragraph.

82. At the same time, she was working on an assignment for one of Wood's cases.

**ANSWER:**

HMB admits that Plaintiff was working on a motion to reconsider for the Firm's managing partner's brother's company on the dates that she was absent from work in November 2013.

83. Despite the fact that the brief was not due until early December, Ms. Mathias had given herself a self-imposed deadline of November 20, 2013 to complete it.

**ANSWER:**

HMB admits that the motion to reconsider was due to be filed with the court on December 4, 2013. HMB denies the remaining allegations contained in Paragraph No. 83.

84. After performing some preparatory work on the brief, Ms. Mathias determined a more simplified approach would be better, and attempted to contact Wood to discuss it before providing a brief that would be different than what he anticipated.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 84. Answering further, Plaintiff first created the brief on the Firm's document management system at 12:23 p.m. on November 20, 2013.

85. Wood ignored Plaintiff's calls and voicemails related to the timing of the draft.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 85.

86. Due to emergency problems at Plaintiff's home (such as no heat and a temperature below 30 degrees) and an emergency brief assigned by another partner, Ms. Mathias emailed and called Wood to let her know that she planned to use that weekend to finish the draft, which was not due until December.

**ANSWER:**

HMB admits that after Plaintiff missed the November 20, 3013 deadline, she e-mailed Wood regarding her draft of the brief, and that after she missed the second deadline of November 22, 2013, she left Wood a voicemail asking if she could have the weekend to work on the brief. HMB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 86.

87. After Wood ignored Ms. Mathias, she also left her multiple voicemails. He also ignored those.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 87.

88. Ms. Mathias worked until midnight that Friday evening and spent the remainder of the weekend completing the brief, and assisting another partner on an emergency filing that was due Monday.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph No. 88.

89.    It was not until Sunday evening that Wood responded to any of Plaintiff's attempts at contact.

**ANSWER:**

HMB admits that Wood responded on Sunday November 24, 2013 to Plaintiff's e-mail of Friday November 22, 2013 at 2:23 p.m.  Answering further, at the time Wood received Plaintiff's 2:23 p.m. e-mail, Wood knew that he would not receive the brief in advance of his 3:00 p.m. conference call with the client and it was apparent that he would not receive it for his review until no earlier than Monday, November 25, 2013.

90.    Ms. Mathias provided Wood with the completed brief that Monday morning, well before the date it was actually due to the court. She provided the emergency brief to the other partner that day as well.

**ANSWER:**

HMB admits that Plaintiff submitted the first draft of the motion to reconsider to Wood on November 25, 2013.  HMB lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph No. 90.  Answering further, the Thanksgiving holiday fell between November 25, 2013 when Plaintiff submitted the motion to Wood and December 4, 2013 when it was due to be filed with the Court.  Additionally, the client had not yet had an opportunity to review the motion.

91.    In this manner, Plaintiff's performance met and exceeded all of the requirements that Department leadership had set for her.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 91.

92.    In late November 2013, the Firm commenced its plan to terminate Ms. Mathias.

**ANSWER:**

HMB admits that on Monday, November 25, 2013, HMB terminated Plaintiff's employment.

93.    Ms. Mathias had previously expressed her concerns about mistreatment to an equity partner the Corporate Department, Jeff Hechtman.

**ANSWER:**

HMB admits that Plaintiff spoke with Jeff Hechtman, an equity partner in the Corporate Department, on November 15, 2013 regarding her efforts within the Firm and various concerns. HMB denies the remaining allegations contained in Paragraph No. 93.

94.    Hechtman requested time to "get up to speed" and determine what had been occurring in the Litigation Department.

**ANSWER:**

HMB admits that on November 15, 2013, Hechtman told Plaintiff he would "get up to speed."

95.    On or about Friday, November 22, 2013, Hechtman emailed Ms. Mathias to set up a meeting for Monday, November 25, 2013 and to inform her that he was now "up to speed."

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 95.

96.    On November 25, 2013, Ms. Mathias received a call from Johnson telling her that the scheduled meeting that day would no longer be with Hectman [sic], but would be with managing partner Keith Berk.

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 96.

97.    At that meeting, the Firm terminated Plaintiff's employment, effective immediately, and she was escorted out of the office.

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 97.

98.     Even though Ms. Mathias was five months pregnant at the time she was fired, the Firm also terminated her health insurance effective three business days later, causing significant hardship for her and her family.

**ANSWER:**

HMB lacks knowledge and information sufficient to form a belief as to the truth of the allegation that "Ms. Mathias was five months pregnant at the time she was fired." HMB denies that Plaintiff's termination was related to her pregnancy and denies that the termination of Plaintiff's health insurance coverage caused significant hardship for her and her family. HMB admits the remaining allegations contained in Paragraph No. 98. Answering further, Plaintiff's health insurance was terminated as required by the Firm's health insurance plan, effective December 1, 2013. Also answering further, Plaintiff declined to elect health insurance coverage under COBRA and declined HMB's offer to pay the cost of COBRA for Plaintiff for the month of December 2013.

99.     The abrupt termination of her health insurance gave Ms. Mathias no opportunity to find alternatives for pre-scheduled appointments that were necessary for her maternity care.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 99.

100.     In the recent past, the Firm had also terminated another attorney who was pregnant at the time of her termination.

**ANSWER:**

HMB admits that it terminated the employment of three attorneys – two male and one pregnant female – as part of a downsizing in 2008. HMB lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained in Paragraph No. 100.

101.     In addition, the Firm refused to pay Ms. Mathias the annual bonus which it had promised to pay her.

**ANSWER:**

HMB admits that Plaintiff was not paid a bonus in 2013. Answering further, Plaintiff did not earn her bonus in a manner consistent with the Firm's bonus plan. HMB denies the remaining allegations contained in Paragraph No. 101.

102. Ms. Mathias had earned her annual bonus throughout the year, but it was not payable until December.

**ANSWER:**

HMB admits that bonuses are payable, if at all, in December, but denies the remaining allegations contained in paragraph 102.

103. The Firm refused to pay Ms. Mathias a *pro rata* share of the bonus, even though her termination took place just two days before the end of the fiscal year.

**ANSWER:**

HMB admits the allegations contained in Paragraph No. 103, but denies that the timing of Plaintiff's termination was related in any way to the payout date of any bonus to which Plaintiff may have otherwise been entitled. HMB denies that Plaintiff was entitled to a bonus payout in 2013.

104. As a result of the Firm's actions, Ms. Mathias has suffered and continues to suffer loss of income, loss of employee benefits, and emotional distress.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 104.

**COUNT I — GENDER DISCRIMINATION IN VIOLATION OF TITLE VII**

105. Plaintiff adopts and realleges paragraphs 1 through 104.

**ANSWER:**

HMB re-states its answers to Paragraphs No. 1-104 and as for its answer to Paragraph No. 105.

106. Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 106.

107. The Finn [sic] discriminated against Ms. Mathias on the basis of her gender, female, when it treated her differently and worse than her similarly situated male colleagues when it: 1) gave her inferior advancement opportunities; 2) passed her up for partnership opportunities in favor of less qualified male associates; 3) made negative comments suggesting that Plaintiff did not meet the Firm's stereotype of a conservative female; 4) took actions that made it much more difficult for Plaintiff to perform her job; and 5) fired her.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 107.

108. As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 108.

**COUNT II — GENDER DISCRIMINATION IN VIOLATION OF THE IHRA**

109. Plaintiff adopts and realleges paragraphs 1 through 108.

**ANSWER:**

HMB re-states its answers to Paragraphs No. 1-108 and as for its answer to Paragraph No. 109.

110. Throughout the relevant time. Ms. Mathias was always meeting the Firm's legitimate performance expectations.

**ANSWER:**

HMB has filed a motion to dismiss Count II, and therefore no answer to this Paragraph is required. To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 110.

111. The Firm discriminated against Ms. Mathias on the basis of her gender, female, when it treated her differently and worse than her similarly situated male colleagues when it:

1) gave her inferior advancement opportunities; 2) passed her up for partnership opportunities in favor of less qualified male associates; 3) made negative comments suggesting that Plaintiff did not meet the Firm's stereotype of a conservative female; 4) took actions that made it much more difficult for Plaintiff to perform her job; and 5) fired her.

**ANSWER:**

HMB has filed a motion to dismiss Count II, and therefore no answer to this Paragraph is required. To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 111.

112.    As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

**ANSWER:**

HMB has filed a motion to dismiss Count II, and therefore no answer to this Paragraph is required. To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 112.

## COUNT III — MARITAL STATUS DISCRIMINATION IN VIOLATION OF THE IHRA

113.    Plaintiff adopts and realleges paragraphs 1 through 112.

**ANSWER:**

HMB re-states its answers to Paragraphs No. 1-112 as and for its answer to Paragraph No. 113.

114.    Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

**ANSWER:**

HMB has filed a motion to dismiss Count III, and therefore no answer to this Paragraph is required. To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 114.

115.    The Firm discriminated against Ms. Mathias on the basis of her marital status, unmarried, when it treated her differently and worse than her similarly situated married colleagues when it:  1) gave her inferior advancement opportunities; 2) passed her up for

partnership opportunities in favor of less qualified married associates; 3) made negative comments suggesting that the Firm disapproved of the fact that Plaintiff is a single mother; 4) took actions that made it much more difficult for Plaintiff to perform her job; and 5) fired her.

**ANSWER:**

HMB has filed a motion to dismiss Count III, and therefore no answer to this Paragraph is required. To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 115.

116. As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

**ANSWER:**

HMB has filed a motion to dismiss Count III, and therefore no answer to this Paragraph is required. To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 116.

**COUNT IV — RETALIATION IN VIOLATION OF TITLE VII**

117. Plaintiff adopts and realleges paragraphs I [sic] through 116.

**ANSWER:**

HMB re-states its answers to Paragraphs No. 1-116 as and for its answer to Paragraph No. 117.

118. Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 118.

119. Ms. Mathias complained to the Firm that she was being subject to gender discrimination.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 119.

120.     At the time she made her complaint, she reasonably believed that she was being subject to unlawful gender discrimination.

**ANSWER:**

HMB lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding Plaintiff's "belief."   HMB denies the remaining allegations contained in Paragraph No. 120.

121.     After she complained, the Firm unlawfully retaliated against her for making her complaint, by: 1) "papering her file" with the goal of setting her up for termination; 2) withholding vital communication from her to make her job more difficult; 3) placing her on a meritless Performance Improvement Plan; and 4) firing her for false and pretextual reasons.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 121.

122.     As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

**ANSWER:**

HMB denies the allegations contained in Paragraph No. 122.

**COUNT V — RETALIATION IN VIOLATION OF THE IHRA**

123.     Plaintiff adopts and realleges paragraphs 1 through 122.

**ANSWER:**

HMB re-states its answers to Paragraphs No. 1-122 as and for its answer to Paragraph No. 123.

124.     Throughout the relevant time, Ms. Mathias was always meeting the Firm's legitimate performance expectations.

**ANSWER:**

HMB has filed a motion to dismiss Count V, and therefore no answer to this Paragraph is required.   To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 124.

26

125.    Ms. Mathias complained to the Firm that she was being subject to gender discrimination.

**ANSWER:**

HMB has filed a motion to dismiss Count V, and therefore no answer to this Paragraph is required.    To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 125.

126.    At the time she made her complaint, she reasonably believed that she was being subject to unlawful gender discrimination.

**ANSWER:**

HMB has filed a motion to dismiss Count V, and therefore no answer to this Paragraph is required.  To the extent an answer is required, HMB lacks sufficient knowledge or information to form a belief as to the truth of the allegation regarding Plaintiff's "belief."  HMB denies Plaintiff was subjected to unlawful gender discrimination.

127.    After she complained, the Firm unlawfully retaliated against her for making her complaint, by:   1) "papering her file" with the goal of setting her up for termination; 2) withholding vital communication from her to make her job more difficult; 3) placing her on a meritless Performance Improvement Plan; and 4) firing her for false and pretextual reasons.

**ANSWER:**

HMB has filed a motion to dismiss Count V, and therefore no answer to this Paragraph is required.    To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 127.

128.    As a direct and proximate result of the Firm's actions, Plaintiff has suffered and continues to suffer damages.

**ANSWER:**

HMB has filed a motion to dismiss Count V, and therefore no answer to this Paragraph is required.    To the extent an answer is required, HMB denies the allegations contained in Paragraph No. 128.

## <u>COUNT VI — FAILURE TO PAY BONUS IN VIOLATION OF THE IWPCA</u>

129.     Plaintiff adopts and realleges paragraphs 1 through 128.

**<u>ANSWER:</u>**

HMB re-states its answers to Paragraphs No. 1-128 as and for its answer to Paragraph

No. 129.

130.     As part of her employment, the Firm promised to pay Ms. Mathias a bonus for work she performed throughout the year.

**<u>ANSWER:</u>**

HMB denies the allegations contained in Paragraph No. 130.

131.     Pursuant to the parties' agreement, the bonus earned throughout the year and was then payable in December 2013.

**<u>ANSWER:</u>**

HMB denies the allegations contained in Paragraph No. 131.

132.     Ms. Mathias in fact earned her bonus for work performed throughout 2013.

**<u>ANSWER:</u>**

HMB denies the allegations contained in Paragraph No. 132.

133.     The Firm fired Ms. Mathias on or about November 25, 2013, preventing Ms. Mathias from receiving any portion of her earned bonus.

**<u>ANSWER:</u>**

HMB admits that it "fired Ms. Mathias on or about November 25, 2013," but denies the

remaining allegations contained in Paragraph No. 133.

134.     A pro rata share of Plaintiffs earned bonus is now due and owing.

**<u>ANSWER:</u>**

HMB denies the allegations contained in Paragraph No. 134.

135.     The Firm refused to pay Ms. Mathias a pro rata share of her earned bonus.

**ANSWER:**

HMB admits that it refused to pay Plaintiff a bonus in 2013, but denies the remaining allegations contained in Paragraph No. 135.

136.   Ms. Mathias made a demand on the Firm that it pay her a pro rata share of her earned bonus. [sic] but the Firm refused.

**ANSWER:**

HMB admits that Plaintiff made a demand on the Firm for a pro rata share of a bonus and admits that the Firm refused Plaintiff's demand.   HMB denies the remaining allegations contained in Paragraph No. 136.

137.   As a result of the Firm's actions, Ms. Mathias has suffered both the loss of her bonus and the amount she has expended in attorneys' fees in seeking to have the bonus paid.

**ANSWER:**

HMB denies the allegations contained in Paragraph 137.

## AFFIRMATIVE AND OTHER DEFENSES[2]

1.   With respect to claims for monetary relief, HMB is entitled to a set-off from any liability for sums earned by Plaintiff since her termination.

2.   Plaintiff is obligated to mitigate her alleged damages with respect to claims for monetary relief.   Those claims should be barred or, in the alternative, reduced if Plaintiff has failed to mitigate her damages.

3.   Plaintiff's damages are cut off as of the date she would have voluntarily resigned and/or was offered another job.

---

[2]   By listing any matter as an Affirmative or other Defense here, Defendant does not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under applicable law.

4.     Punitive damages are unavailable under Title VII because Plaintiff cannot demonstrate that HMB engaged in intentional discrimination with malice or with reckless indifference to the Plaintiff's federally protected rights.

5.     Plaintiff is precluded from recovering for any discriminatory acts alleged to have occurred more than 300 days prior to the filing of her EEOC Charge of Discrimination (under Title VII), more than 180 days prior to the filing of her IDHR Charge of Discrimination (under the IHRA, if those claims survive HMB's motion to dismiss), for any discriminatory acts alleged to have occurred after the filing of those Charges (in the case of Plaintiff's IHRA claims, if those claims survive HMB's motion to dismiss), or for any claims that are otherwise found to be beyond the scope of the IDHR Charge (if Plaintiff's IHRA claims survive HMB's motion to dismiss) and the EEOC Charge that serve as the predicate for this lawsuit.

6.     Even if Plaintiff can prove that she was discharged on the basis of her sex in violation under 42 U.S.C. §2000e-2(m), HMB would have taken the same action in the absence of the alleged impermissible motivating factor.    Therefore, under 42 U.S.C. §2000e-5(g)(2)(B)(ii), the Court shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion or payment.

7.     Even if Plaintiff can prove that HMB retaliated against her in violation of 42 U.S.C. §2000e-3(a), HMB would have taken the same action in the absence of the alleged impermissible motivating factor.  Therefore, HMB is not liable to Plaintiff on her retaliation theory or for costs or attorneys' fees.

8.     Even if Plaintiff was discharged in violation of Title VII or the IHRA (if Plaintiff's IHRA claims survive HMB's Motion to Dismiss), her back pay damages should be

cutoff as of the date that she would have been discharged based on evidence acquired after her termination.

   9. Plaintiff is not entitled to any bonus under the IWPCA because she failed to perform the requirements necessary to receive the bonus, and the bonus was therefore not "earned" by Plaintiff.

            Respectfully submitted,


            /s/Clifford R. Perry III
            Clifford R. Perry III
            One of the Attorneys for Defendant

Clifford R. Perry III (06204955)
Lily Strumwasser (6314093)
Laner Muchin, Ltd.
515 N. State Street, Suite 2800
Chicago, IL  60654
Phone: 312/467-9800
Fax: 312/467-9479

## CERTIFICATE OF SERVICE

I, Clifford R. Perry III, an attorney, hereby certify that on October 20, 2014, I caused the foregoing Defendant's' Answer to Plaintiff's Complaint to be served upon all counsel of record through the Court's electronic filing system.

Kristen E. Prinz
Jessica Fayerman
The Prinz Law Firm, P.C.
1 East Wacker Drive, Suite 550
Chicago, IL  60601
kprinz@prinz-lawfirm.com
jfayerman@prinz-lawfirm.com


/s/Clifford R. Perry III
Clifford R. Perry III
One of the Attorneys for Defendant